421 A.2d 660

**COMMONWEALTH of Pennsylvania,**

**v.**

**Carl L. BROWN, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 22, 1980.
Decided Sept. 22, 1980.

508

Ronald W. Morrison, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Asst. Dist. Atty., Ellen Mattleman, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

The question raised in this appeal is the interrelationship that can arise, under a given factual situation, between the defense of others and self–defense. The trial court did instruct the jury of appellant's right to use deadly force in defense of another, but refused, although requested, to

charge the jury as to appellant's right to act in self–defense.[1] Under the facts of this case we are constrained to conclude that it was error to refuse this instruction and

1. The pertinent portion of the record reflects:
THE COURT: ... there are certain additional instructions that I feel that are applicable in this particular case. Members of the jury, in this case justification is a defense. If the defendant reasonably believed that his intervention was necessary to protect Estelle Wilson, and that the force used was immediately necessary to protect Estelle Wilson against the force used by Craig Johnson on the same occasion as the defendant used force, because the Commonwealth has the burden of disproving the defense of justification, you may find the defendant guilty only if you are satisfied beyond a reasonable doubt either that the defendant did not reasonably believe that his intervention was necessary to protect Estelle Wilson then and there against the force used by Craig Johnson. In this case the evidence indicates that in protecting Estelle Wilson, the defendant may have used what is called deadly force, which I defined for you as force that was readily capable of causing death or serious bodily injury under the circumstances in which it was used.
Special rules apply in determining the available [sic] of the defense of justification when deadly force was used in the protection of another person. Because the Commonwealth has the burden of disproving the defense of justification, you may find the defendant guilty only if you are satisfied beyond a reasonable doubt that he did not reasonably believe that the use of deadly force was then and there necessary to protect Estelle Wilson against death or serious bodily injury. In other words, if you are satisfied beyond a reasonable doubt that the defendant was not reasonable in his belief, that the use of deadly force was then and there necessary to protect Estelle Wilson from the danger of death or serious bodily injury, only then you may find the defendant guilty.

\* \* \* \* \* \*

MR. BASHMAN: (Defense Counsel)
... I think that in the general definition of self–defense, Your Honor spoke about the protection of Estelle Wilson. Of course, I understand that. There was also the possibility of self protection.
THE COURT: Off the record. (Whereupon there was a discussion in Chambers, off the record.)
(The following is in Chambers, on the record, as follows.)
THE COURT: In answer to counsel's exception, specific exception, my position is simply this. That the defendant's presence there is only by reason of the fact that he is there to protect Estelle Wilson. His rights can rise no higher than hers. I have given the jury full instructions with respect to the rights, her rights, absence any duty to retreat. And I maintain that the defendant's rights can rise no higher.
MR. BASHMAN: Your Honor, would you note my specific exception to that?
THE COURT: Certainly.

consequently the judgments of sentence must be reversed and a new trial must be awarded.

On December 24, 1975, appellant shot and killed Craig Johnson at the Jubilee Bar at 16th and Fountain Streets in Philadelphia. The day before the shooting, appellant was told by his cousin, Estelle Wilson, a barmaid at the Jubilee Bar, that her former boyfriend, the victim, had been beating and threatening to kill her. On December 24, at approximately 7:50 a. m., appellant went to the Jubilee Bar to await the victim's arrival. Johnson arrived between 9:00–9:30 a. m., went behind the bar and started by beat up Estelle Wilson. Appellant, noticing that Johnson had his hand in his pocket, pulled him away from Wilson. Johnson spun around and produced a gun. Appellant and Johnson struggled over the gun and it fell to the floor. Appellant seized the gun and shot the victim in a further struggle for possession of the weapon. Appellant was arrested later that day and charged with murder, possessing instruments of crime and prohibited offensive weapons.

The theory of the defense in this case was that although he initially entered the affray in defense of his cousin, Estelle Wilson, his ultimate use of deadly force was to defend his own person. Thus while the defense of another was important to establish who was the initial aggressor, it did not prove a justification for the use of deadly force since at that time deadly force was resorted to, Estelle Wilson was not then in imminent danger of death or serious bodily harm.

Under the court's charge the use of deadly force could only be employed if it was necessary to protect Estelle Wilson from the danger of death or serious bodily injury. It is clear, under the instant facts, that the jury had no basis for finding the killing justified within the confines of that instruction. The only theory of justification available to appellant under the facts of this case was that of self–defense.

512

■ Our case law makes it crystal clear that the charge of self–defense must be given upon request where the jury would have a possible basis for finding it. *See Commonwealth v. Black,* 474 Pa. 47, 376 A.2d 627 (1977).

While there is no burden on the defendant to prove a claim of self–defense, it is nevertheless required that before such a defense is properly in issue at trial, there must be some evidence, from whatever source, to justify such a finding. *Commonwealth v. Black, supra,* 474 Pa. at 53, 376 A.2d at 630. *See also Commonwealth v. Walley,* 466 Pa. 363, 367 n. 2, 353 A.2d 396, 398 n. 2 (1976); *Commonwealth v. Cropper,* 463 Pa. 529, 537–538, 345 A.2d 645, 649 (1975).

Thus, if there was evidence which would have supported the claim of self–defense, it was for the trier of fact to pass upon that evidence and improper for the trial judge to exclude such consideration by refusing the charge. *Commonwealth v. Gonzales,* 463 Pa. 597, 345 A.2d 691 (1975); *Commonwealth v. Lowe,* 460 Pa. 357, 333 A.2d 765 (1975).

■ To avail oneself of deadly force for self–protection, three factors must be found to exist. First, the actor must have reasonably believed himself to be in imminent danger of death or serious bodily harm, and that it was necessary to use deadly force against the victim to prevent such harm. Second, the actor must have been free from fault in provoking or continuing the difficulty which resulted in the slaying. Third, the actor must have violated no duty to retreat. 18 Pa. C.S.A. § 505; *Commonwealth v. McQuire,* 487 Pa. 208, 409 A.2d 313 (1979); *Commonwealth v. Black, supra; Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975).

■ As to whether appellant was free from provoking the difficulty, the jury was properly permitted to consider his right to defend his cousin. *See Commonwealth v. Jackson,* 467 Pa. 183, 355 A.2d 572 (1976).[2] This fact is not

2. We note that the common law limitations on the defense of others to a near relative has been abandoned under the Crimes Code. 18 Pa. C.S.A. § 506.

questioned by the Commonwealth and the charge given did in fact permit the jury to properly weigh the threshold question as to who was the initial aggressor. The problem arises because the ultimate question to be answered was improperly framed. The jury was expressly directed to consider only whether "the use of deadly force was then and there necessary to protect *Estelle Wilson* from the danger of death or serious bodily injury . . ." Stating the issue in this manner, the trial court precluded a finding that the force used was reasonably necessary to protect *appellant* from the danger of death or serious bodily harm.

The Commonwealth now urges that the failure to give a charge as to self–defense can be justified upon the ground that the fatal shot was fired only after the threat of imminent danger of death or serious bodily harm had been removed. While this is a possible construction of the facts, it is not the only reasonable interpretation that may have been drawn from the evidence presented. Since we believe that there was a reasonable interpretation of the evidence that would have been consistent with self–defense, we cannot accept this argument of the Commonwealth.

■ The only evidence on this point is found in the statement given by appellant to police officials at the time of his arrest and introduced at trial by the Commonwealth.

[A]bout 9:00 or something, and he came in the bar and when he came in the bar he walked right behind the bar and grabbed her and start beaten [sic] her up and he had his hand in his pocket. When he pulled the thunderball, I went and grabbed him. When I grabbed him he spin [sic] around and pulled out a pistol. And we tussled with the gun and I grabbed him and the gun fell and I got it and I shot him.

From this testimony it cannot be said, as a matter of law, that appellant had sufficient possession of the weapon so as to end the threat to himself and to permit his withdrawal

without the possibility of further injury. There is no indication in this record that the deceased at this point demonstrated any intention to cease his assault or to refrain from further efforts to regain possession of the weapon. This record does not conclusively establish that at the instant the fatal shot was fired appellant was insulated from any further threat of harm.[3] In his opinion the trial judge assumed that appellant's momentary possession of the weapon placed him in the position of a "provocateur." (Slip opinion at p. 6). This was a conclusion that could only have been properly reached by the finder of fact after having been given proper instructions by the trial court.[4]

In *Commonwealth v. McComb, supra*, this Court stated:

To determine the reasonableness of the use of a deadly force, the opportunity to retreat, the role of the accused in provoking or escalating the difficulty, the trier of fact is required, not only to evaluate the conduct of the appellant

---

3. In this context it must be remembered that it is the Commonwealth's obligation to disprove self–defense beyond a reasonable doubt. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978), *cert. denied* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1979); *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977); *Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976).

4. In a converse situation, we recently stressed in *Commonwealth v. Simmons*, 482 Pa. 496, 411, 394 A.2d 431, 439 (1978):

[Defendant's] basic contention is that the jury should have believed his evidence that the shooting was committed in self–defense or in defense of others and disbelieved the Commonwealth's evidence concerning an inference of malice from the use of a deadly weapon on a vital part of the body. We do not believe the court erred in failing to remove the murder indictment from the jury's consideration.

In *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975), this Court stated:

". . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The factfinder is free to believe all, part, or none of the evidence. (Citations omitted.)

Factual disputes are for the jury to resolve, and the court below did not commit error in allowing the jury to consider the murder indictment. . . ."

In the present case the jury could have viewed the evidence consistent with appellant's plea of self–defense.

during the final confrontation but also to view it in light of those circumstances that preceded and precipitated that final confrontation. [Citations omitted.]

In this case, viewing the entire encounter, particularly recognizing that it was the deceased who first resorted to a deadly force, it was clearly the province of the jury to determine the feasibility of an attempt by appellant to disengage at the point when he came into momentary possession of the revolver.

Finally, the trial court suggests that it would have been duplicitous for him to have charged both the defense of others and the defense of self–defense. Clearly this judgment was erroneous. As has been stated, while the defense of others was relevant in determining appellant's right to initially have become involved in the encounter, his right to use deadly force was dependent upon his right of self–defense. Failure to give the charge of self–defense in this case in effect deprived appellant of the only possibility of a finding of a justified killing.

Accordingly, the judgments of sentence are reversed and a new trial is awarded.[5]

LARSEN, J., filed a concurring opinion.

LARSEN, Justice, concurring.

I join in the majority opinion, but want to note that appellant was convicted of voluntary manslaughter and possessing instruments of a crime.

5. In this trial, appellant was also convicted of a violation of Section 907 of the Pennsylvania Crimes Code 18 C.P.S.A. § 907. Since this conviction requires a finding that appellant must be found to have intended to use the weapon criminally, *Com. v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978), a proper determination of the self–defense issue is critical to the finding as to this weapons charge. Thus we must also reverse the conviction entered at 429 January Term, 1977.